IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

NICOLE L. SCHEFFLER             :        CIVIL ACTION
                                 :
       v.                         :
                                 :
ULTRA PAGE, INC., ET AL.         :        NO. 07-1278

**MEMORANDUM**

**Padova, J.**                                                   **June 22, 2007**

       Plaintiff Nicole L. Scheffler brings this action against her former employer, Ultra Page, Inc.

("UPI"), and the President and Vice President of Operations of UPI, Richard P. Ferns and Jeffrey

D. Linso, for gender discrimination, pregnancy discrimination and retaliation in violation of Title

VII, 42 U.S.C. § 2000(e), *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa.

Cons. Stat. Ann. §§ 951-963.   Plaintiff also asserts a common law claim for intentional infliction

of emotional distress ("IIED").  Defendants have filed a Motion to Dismiss both the PHRA claims

against Linso and Ferns and the IIED claim.  For the following reasons, we grant the motion only

insofar as it seeks dismissal of the IIED claim.

## I.       FACTUAL BACKGROUND

       The Complaint alleges the following facts.  Plaintiff began working as UPI's Employment

Operations Manager on February 1, 2004, and ended her relationship with the company in May of

2005. (Compl. ¶ 15.)  When Plaintiff began with the company, she was the only female member of

management.  (Id. ¶ 30.)   Plaintiff was, however, in charge of hiring and in that capacity, she hired

a second female manager.  (Id. ¶¶ 27-28.)  When she did so, Ferns rebuked her for hiring someone

who was not "one of the boys." (Id. ¶ 28.)   Moreover, when Plaintiff conveyed the new employee's

complaints that she was being paid less than other male employees in the same position to Ferns and Linso, the two told her that she needed to be "one of the boys." (Id. ¶ 29.)

Plaintiff contends that she was subjected to a variety of other discriminatory conduct based on her gender during her tenure at the company.  Among other things, UPI's male employees conducted business at strip clubs and on one occasion, Plaintiff was told to take her own car to a company function at a sporting event, because the male members of management would be going to a strip club afterwards. (Id. ¶¶ 34-35.)  On another occasion, "the Paris Hilton sex video" was circulated among UPI's male management, and Ferns played the video in his office on a large, wall-mounted computer screen, opposite his open office door. (Id. ¶ 36.)  During the playing of the video, Plaintiff entered Ferns' office several times in an attempt to discuss business, and she told him that she thought he knew how uncomfortable the video made her. (Id. ¶ 37.)  Yet another time, a male employee of UPI circulated an email with a photo attachment of a woman wearing only a skimpy thong with a Nokia symbol on it. (Id. ¶ 38.)  According to Plaintiff, Ferns made the photo his computer background and did not reprimand the employee who had circulated it. (Id. ¶ 39.)  Linso also sent an email around the office with instructions for using a new WebMail program, and included in the email an example inbox message that "reference[d] materials of a sexual nature." (Id. ¶ 40.)  More regularly, Linso used vulgar language in conversations with Plaintiff, which he did not do with male employees.  (Id. ¶ 33.)  By way of example, Plaintiff alleges that Linso "used the word f**k many times in referencing other employees or even referencing inanimate objects such as his computer."  (Id.)

Plaintiff further alleges that Ferns told her that she had to lose weight and started a "weight board," monitoring her weight along with his own and that of two male employees. (Id. ¶ 31.)  The

individuals on the weight board would periodically weigh in and the one who lost the most weight would win cash. (Id.) Plaintiff believed that the contest, in which she was required to participate, was created solely for the purpose of getting her to lose weight. (Id.)

Ultimately, during the week of Christmas 2004, Plaintiff was hospitalized with complications from her pregnancy. (Id. ¶ 18.) She returned to work on January 3, 2005, but on January 9, 2005, Ferns told her that he did not think that she was capable of doing her job and that she should therefore return home and not come back to work until after she gave birth. (Id. ¶¶ 20-21.) Meanwhile, while Plaintiff was out on leave, a mortgage company called UPI to verify her employment status and Ferns told the company that she was no longer employed with UPI, causing the mortgage company to deny Plaintiff a mortgage and forcing Plaintiff to purchase a less desirable home. (Id. ¶ 22.) Thereafter, while Plaintiff was still on leave, she received a telephone call from Ferns in which he advised her that her position was being eliminated and that she could take the position of Financial Officer for a salary $10,000 less than that which she had been making as Employment Operations Manager. (Id. ¶ 23.) Plaintiff objected to this decrease in salary and Ferns stated that they would discuss the matter further when she returned to work. (Id.) However, when Plaintiff returned on May 3, 2005 and again objected to the title and salary, neither Ferns nor Linso "gave Plaintiff any reason to believe that her objections would be heard at that time." (Id. ¶ 24.) According to Plaintiff, on May 7, 2005, she "was forced to leave her job because despite all of her objections, Defendants changed the terms and conditions of her employment upon her return from maternity leave." (Id.)

In her Complaint, Scheffler asserts four causes of action: (1) a Title VII claim against UPI for gender and pregnancy discrimination (Count I); (2) a PHRA claim against UPI, Ferns, and Linso

for gender and pregnancy discrimination (Count II); (3) a retaliation claim against UPI, Ferns and

Linso under the PHRA, and against UPI under Title VII (Count III); (4) an IIED claim against UPI,

Ferns and Linso (Count IV).

Defendants have moved to dismiss (1) Counts II and III insofar as they seek to impose

individual liability against Ferns and Linso under the PHRA,[1] and (2) Count IV in its entirety.[2]

## II.  STANDARD OF REVIEW

When deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the

court looks primarily at the facts alleged in the complaint and its attachments.  Jordan v. Fox,

Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).  All well pled allegations in the

complaint must be viewed in the light most favorable to the Plaintiff.  Angelastro v.

Prudential-Bache Securities, Inc., 764 F.2d 939, 944 (3d Cir. 1985).

A Rule 12(b)(6) motion will be granted when a plaintiff cannot prove any set of facts,

consistent with the complaint, that would entitle him or her to relief.  Ransom v. Marrazzo, 848 F.2d

398, 401 (3d Cir. 1988).  While the court must accept all well pled allegations in the complaint, and

view them in the light most favorable to the plaintiff, Angelastro v. Prudential-Bache Securities, Inc.,

764 F.2d 939, 944 (3d Cir. 1985), it need not credit a complaint's "bald assertions" or "legal

conclusions."  Morse v. Lower Merion School District, 132 F.3d 902, 906 (3d Cir. 1997) (citations

---

[1]Defendants have also moved to dismiss Counts I and II insofar as they seek to impose individual liability against Ferns and Linso under Title VII.  However, as Scheffler points out in her response to the motion to dismiss, the Complaint does not assert such claims of individual liability under Title VII.

[2]Defendants have also moved to dismiss Count III insofar as it seeks punitive damages against Ferns and Linso under the PHRA, but in her response, Scheffler voluntarily withdraws any such claim, thereby mooting this aspect of Defendants' motion.

omitted); see also Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed. 1997) (noting that courts, when examining 12(b)(6) motions, have rejected "sweeping legal conclusions cast in the form of factual allegations" (citation omitted)).

## III. DISCUSSION

### A. __Individual Liability of Ferns and Linso under the PHRA (Count II & III)__

In their first claim, Defendants assert that Plaintiff's allegations of gender and pregnancy discrimination and retaliation in Counts II and III of the Complaint do not state a claim against the individual defendants under the PHRA, citing Wasserman v. Potamkin Toyota, Inc., Civ. A. No. 98-0792, 1998 WL 744090 (E.D. Pa. Oct. 23, 1998).

In Wasserman, the district court noted that Section 955(a) of the PHRA only establishes liability for employers. Id. at *2. It further observed, however, that Section 955(e) establishes accomplice liability for individual employees who aid and abet a Section 955(a) violation. Id. (citing 43 Pa. Cons. Stat. Ann. § 955(e) (providing liability for employees who "aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice.")). The Wasserman court went on to explain that "a supervisory employee who engages in discriminatory conduct while acting in the scope of his employment shares the intent and purpose of the employer and may be held liable for aiding and abetting the employer in its unlawful conduct." Id. (quoting Glickstein v. Neshaminy Sch. Dist., Civ. A. No. 96-6236, 1997 WL 660636, at *12 (E.D. Pa. Oct. 22, 1997)). "Thus, a supervisor's failure to take action to prevent discrimination, even when it is the supervisory employee's own practices at issue, can make him or her liable for aiding and abetting the employer's insufficient remedial measure." Id. (quoting Frye v. Robinson Alarm Co., Civ. A. No. 97-0603, 1998 WL 57519, at *7 (E.D. Pa. Feb. 11, 1998)).

-5-

Here, the Complaint alleges that both Ferns and Linso had supervisory authority over Plaintiff by alleging that Ferns was the President of UPI at all relevant times and that Linso was the company's Vice-President of Operations starting in October of 2004.  (Compl. ¶¶ 16-17.)  The Complaint further alleges, as detailed above, that both Ferns and Linso engaged in sexually offensive and hostile conduct, including Ferns' airing of the "Paris Hilton sex video" in his office, Linso's sending of a sexually-charged email, and both Ferns' and Linso's involvement in the alleged retaliation against Plaintiff for complaining about discriminatory conditions in the workplace. Accordingly, Plaintiff has stated claims against Ferns and Linso for individual liability under the PHRA and Defendants' Motion to Dismiss such claims is denied.

### B.  Intentional Infliction of Emotional Distress

Defendants also argue that Plaintiff's claim of IIED in  Count IV of the Complaint should be dismissed because it fails to allege "outrageous conduct" sufficient to sustain an IIED claim.[3]

A legally cognizable claim for IIED must be based on conduct that was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." Hoy v. Angelone, 720 A.2d 745, 754 (Pa. 1998) (citations omitted).  In other words, the tort is reserved "for only the most clearly desperate and ultra extreme conduct." Id.  Significantly, both the Pennsylvania Supreme Court and the Court of Appeals for the Third Circuit have recognized that it is rare for conduct in the employment context to be sufficiently outrageous to meet this stringent standard. Id.; Cox. v. Keystone Carbon, 861 F.2d 390, 395 (3d Cir. 1988).  Indeed, in the gender discrimination in

---

[3]Defendants also argue that the IIED claim is barred by the Pennsylvania Worker's Compensation Act.  However, we need not reach this claim as we conclude that the misconduct alleged is not so outrageous as to state a claim for IIED.

employment case of <u>Hoy v. Angelone</u>, the Pennsylvania Supreme Court held that sexual propositions, the regular telling of off-color jokes and use of profanity, physical contact with a plaintiff's knee and the posting of sexually suggestive pictures did not support recovery on an IIED claim. <u>Hoy</u>, 720 A.2d at 754-55.

In the instant case, the allegations of misconduct are no more egregious than those in <u>Hoy</u>. While this case, unlike <u>Hoy</u>, involves allegations of retaliation, it does not include other allegations, present in <u>Hoy</u>, of sexual propositions and improper touching. Moreover, the allegations in this case are no more egregious than those in other cases in this district in which no IIED claim could be sustained. <u>See</u>, <u>e.g.</u>, <u>Schlichter v. Limerick Township</u>, Civ. A. No. 04-4229, 2005 WL 984197 (E.D. Pa. Apr. 26, 2005) (no IIED when, in retaliation for complaints of hostile work environment, hotel key and condoms placed in plaintiffs' truck, and bumper sticker with rear end of woman in thong bikini placed on bumper of truck); <u>LaPenta v. City of Philadelphia</u>, Civ. A. No. 03-518, 2004 WL 1656607 (E.D. Pa. July 23, 2004) (no IIED when supervisor told plaintiff he wanted to kiss her genitalia and make love to her, made lewd comments about her appearance and sexuality, grabbed, kissed and touched her legs, gave her gift of a condom, and chased her around the workplace attempting to kiss her); <u>but see</u> <u>Merritt v. Delaware River Port Auth.</u>, Civ. A. No. 98-3313, 1999 WL 285900 (E.D. Pa. Apr. 20, 1999) (conduct sufficient to establish IIED claim where co-worker touched plaintiff's genitals, exposed himself to plaintiff, engaged in masturbation while calling plaintiff's name, approached plaintiff from behind and simulated sexual act, and looked under bathroom stall while plaintiff was using bathroom).

At its core, the conduct alleged here is disturbing and has no place in a modern workplace, but it does not rise to the level of "the most clearly desperate and ultra extreme conduct," which is

required to support an IIED claim.  <u>Hoy</u>, 720 A.2d at 754.  Accordingly, we grant Defendants'

Motion to Dismiss Plaintiff's IIED claim.

**IV.  Conclusion**

For the above reasons, Defendants' motion is granted only insofar as it requests dismissal of

Count IV and is denied in all other respects.  An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

NICOLE L. SCHEFFLER : CIVIL ACTION
:
v. :
:
ULTRA PAGE, INC., ET AL. : NO. 07-1278

## ORDER

**AND NOW**, this 22nd day of June 2007, upon consideration of the Motion to Dismiss filed by Ultra Page, Inc., Richard P. Ferns, and Jeffrey D. Linso (Docket Entry #13), and Plaintiff's Response thereto, **IT IS HEREBY ORDERED** that the Motion is **GRANTED** in part and **DENIED** in part as follows:

    1.    The Motion is **GRANTED** insofar as it seeks dismissal of Count IV.

    2.    Count IV is **DISMISSED WITH PREJUDICE**.

    3.    The Motion is **DENIED** in all other respects.

BY THE COURT:

/s/ John R. Padova, J.
John R. Padova, J.